No. 23-3840

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee*,

v.

ALEXANDER SITTENFELD,
a/k/a "P.G." Sittenfeld,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Ohio (Western Division) (Cole, J.)
District Court Case No. 1:20-cr-142

## P.G. SITTENFELD'S REPLY IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

James M. Burnham
KING STREET LEGAL, PLLC
800 Connecticut Ave., NW
Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

Charles H. Rittgers
Charles M. Rittgers
Neal D. Schuett
Gus J. Lazares
RITTGERS & RITTGERS
12 East Warren Street
Lebanon, OH 45036
 (513) 932-2115
neal@rittgers.com

Yaakov M. Roth
Harry S. Graver
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-7658
yroth@jonesday.com

Justin E. Herdman
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7113
jherdman@jonesday.com

*Counsel for Defendant-Appellant P.G. Sittenfeld*
*(Additional Counsel Listed Below)*

Alexander V. Maugeri
JONES DAY
250 Vesey St.
New York, NY 10281
(202) 326-3939
amaugeri@jonesday.com

The Government does not dispute that P.G. is neither a flight risk nor a danger. It does not dispute that his appeal is not for delay. It does not dispute that, absent relief, he will serve most (if not all) of his sentence before this Court can resolve his appeal. And it does not dispute that the trial court denied release on the mistaken premise that P.G. had to show that reversal was *likely*. All P.G. must show is that his appeal presents "close" questions that would result in reversal *if resolved in his favor*. *Accord* Opp. 8.

Judge Cole agreed P.G. has "grounds for appeal" (A131); the Government denies even this standard is met. But it does not contest that other courts *have* resolved the questions here in P.G.'s favor—which itself shows they are "close." The Government's theme is that a jury convicted. But that is the start, not the end, of every bond motion. Verdicts can be reversed. But without relief, any such reversal here will come too late.

## I. THE *McCORMICK* QUESTION WARRANTS RELEASE.

P.G.'s legal argument is that *McCormick* requires unambiguous evidence of a *quid pro quo* before a campaign contribution can substantiate a federal bribery charge. Other federal courts have adopted that position; none has rejected it; and the Government's contrary view would be untenable for all of the reasons that animated *McCormick* itself. If P.G. is correct about the law's demands, there is no serious question the evidence was insufficient. Even Judge Cole conceded that the evidence was ambiguous. A107.

The Government's core response is that this amounts to a sufficiency challenge, where jury verdicts attract deference. But the actual dispute is over the *legal rule* underlying that sufficiency analysis. *McCormick* meaningfully heightens the standard for

1

guilt, and thus for sufficiency. And given *McCormick*'s First Amendment roots, this Court has an "independent" obligation to review the "entire record" to ensure there is no "forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984). Whether this prosecution crossed that line by deeming an ambiguous record legally sufficient is at minimum a "close" question.

<u>Legal Standard.</u>  The Government does not dispute that other courts agree with P.G. the *quid pro quo* in a *McCormick* case must be "clear and *unambiguous*, leaving *no uncertainty* about the terms of the bargain." *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) (emphases added). And the Government identifies zero cases holding otherwise, or taking the district court's view that ambiguous evidence can suffice. The Government quibbles over whether the *factual record* in other cases manifested any ambiguity (Opp. 17), but the key point is that none of those courts adopted the *legal rule* upon which the court here hinged P.G.'s convictions: that ambiguous evidence suffices.

That rule is untenable. Far from disputing that it will cast a pall of prosecution over routine politics, the Government *embraces* that. It urges that an "explicit" *quid pro quo* is whatever a lay jury thinks it is (Opp. 16), creating a world where "no politician can accept money from anybody who is going to have business coming before them [without] leaving it up to twelve of their peers to decide whether … an inference could be drawn that there was some illicit deal" (A94). That is literally what *McCormick* sought to prevent. 500 U.S. 257, 272 (1991). And this case perfectly illustrates how gutting *McCormick* would allow prosecutors to entrap any honest elected official (or donor).

2

Factual Application: Despite its misleading rhetoric as to the trial evidence, the Government fails even to acknowledge that the *district court itself* admitted the record's ambiguity. A107. At this stage, that concession is dispositive: It means that if P.G. is right about the legal standard, it is at least "close" whether the evidence clears the bar.

If anything, the Government's own slanted recitation of the facts underscores its *McCormick* problem. Recall, this *entire episode* was a manufactured sting; every aspect was scripted, and every moment recorded. Despite that, even the Government's curated account of its best evidence only highlights the absence of a clear *quid pro quo*.

*First*, the Government emphasizes P.G.'s opaque "love you but can't" comment, which is readily susceptible to a more natural (lawful) meaning, particularly occurring in a discussion with a "friend[]" (Opp. 2) and prior donor. *Second*, it harps on how P.G. expressly *refused* a bribe when offered; he explained he could seek donations in light of his voting record and policy positions, but not in exchange for any specific actions. That is precisely *right*—yet the Government wants to draw an inference of corruption from P.G. giving his friend the benefit of the doubt. *Third*, the Government stresses how P.G. helped donors give anonymously, but ignores that doing so is *constitutionally protected* (for the very reason Ndukwe gave—fear of political blowback). Perhaps recognizing how incredibly thin all of this is, the Government mischaracterizes conversations using disjointed snippets that are paragraphs or minutes apart (*e.g.*, Opp. 14-15), and makes demonstrably false claims (*e.g.*, that P.G. had not previously advanced 435 Elm, *see* A78-83, A137). The Court can and should read the brief, key transcripts for itself.

3

Ultimately, whatever *McCormick* requires, it at least must be more than what was insufficient for Mr. McCormick. But the "basic structure of the exchange in *McCormick* is analogous to that [] in this case": a campaign donation *quid*, an official act *quo*, and circumstantial evidence, but no "clear and unambiguous" *pro*. *United States v. Benjamin*, 2022 WL 17417038, at *10 (S.D.N.Y. 2022). As in *McCormick*, the Government only musters "temporal proximity, winks and nods, and vague phrases"—that could perhaps carry the day in a case about Rolexes, but not one about campaign contributions. *Id.*

In sum, since other courts have agreed with P.G.'s *legal* predicate, and the district court admitted his *factual* predicate, his appeal plainly presents a "close" question.

## II. THE CONSTRUCTIVE AMENDMENT QUESTION WARRANTS RELEASE.

The Government's constructive amendment also warrants relief. Again, given the decisions of this Court and other Circuits, it is at least "close" whether prosecutors were bound by the specific theory of bribery in the indictment's "to wit" clause.[1]

The Government does not contest that "'[t]o wit' is an expression of limitation which … makes what follows an essential part of the charged offense." *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994). It instead claims that "to wit" clauses are nullified if the count includes a boilerplate incorporation of background allegations. But none of the cases the Government cites for this purported exception (Opp. 19)

---

[1] Contrary to the Government's citation-less claim, *de novo* review applies. P.G. *did* object to the instructions that allowed the constructive amendment. R.107, PageID 1181. And "there can be no forfeiture where the district court … addressed the merits," *Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018), as Judge Cole did here.

4

actually articulates it. And such an exception would defeat the whole point of a "to wit" clause—to *narrow* a charge when the indictment identifies multiple acts that could constitute the offense. In other words, that other allegations could be considered corrupt shows only that the Grand Jury used a "to wit" clause precisely to specify the *particular* corrupt agreement at issue—*viz.*, with Rob. The Government's concocted exception to the plain meaning of "to wit" thus cannot render P.G.'s appeal not "close."

The Government next defends the post-trial theory that the jury could have treated Ndukwe as a conduit to Rob. But it ignores all the reasons why that theory makes no sense. The indictment and evidence showed that the "love you but can't" statement concerned *direct contributions* from people *other than Rob*. Nor was the jury even *presented* with the conduit theory, making it quite impossible to establish "with certainty" that the jury convicted on that basis. *Stirone v. United States*, 361 U.S. 212, 217 (1960).

Finally, the Government claims "love you but can't" was presented only as proof of *solicitation* (Count 3), not of *bribery* (Count 4). Not so. Judge Cole called this "the best example" of "an explicit deal" *for both counts*. A99-100. And the Government cited it as evidence *for both counts*. R.276, PageID 6975, 6984. Count 4 told the jury to convict if P.G. "agreed to accept" a bribe. R.202, PageID 3226. If the jury believed his comment was a corrupt solicitation, it could easily have found a completed agreement based on Ndukwe's reply that he would "go to work on" collecting contributions. A144.

Here too, P.G.'s appeal presents a "close" question. This Court should grant release, so he is not forced to serve his entire sentence before his appeal is decided.

5

| | |
|---|---|
| Date: November 3, 2023 | Respectfully submitted, |
| | |
| | /s/ *Yaakov M. Roth* |
| James M. Burnham | Yaakov M. Roth |
| KING STREET LEGAL, PLLC | Harry S. Graver |
| 800 Connecticut Ave., NW | Ryan M. Proctor |
| Suite 300 | JONES DAY |
| Washington, DC 20006 | 51 Louisiana Ave. N.W. |
| (602) 501-5469 | Washington, DC 20001 |
| james@kingstlegal.com | (202) 879-7658 |
| | yroth@jonesday.com |
| Charles H. Rittgers | |
| Charles M. Rittgers | Justin E. Herdman |
| Neal D. Schuett | JONES DAY |
| Gus J. Lazares | 901 Lakeside Avenue |
| RITTGERS & RITTGERS | Cleveland, OH 44114 |
| 12 East Warren Street | (216) 586-7113 |
| Lebanon, OH 45036 | jherdman@jonesday.com |
| (513) 932-2115 | |
| neal@rittgers.com | Alexander V. Maugeri |
| | JONES DAY |
| | 250 Vesey St. |
| | New York, NY 10281 |
| | (202) 326-3939 |
| | amaugeri@jonesday.com |

*Counsel for Defendant-Appellant P.G. Sittenfeld*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume and typeface requirements of Sixth Circuit Rule 9, because it is no longer than 5 pages, has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font, and otherwise satisfies Federal Rule of Appellate Procedure 27(d)(1).

November 3, 2023 /s/ *Yaakov M. Roth*

Yaakov M. Roth

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2023, I electronically filed the original of the foregoing brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ Yaakov M. Roth*

Yaakov M. Roth