No. 23-3840

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

UNITED STATES,
*Appellee*,

v.

ALEXANDER SITTENFELD,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Ohio (Western Division) (Cole, J.)
District Court Case No. 1:20-cr-00142

## ALEXANDER (P.G.) SITTENFELD'S MOTION TO CLARIFY ORDER GRANTING RELEASE PENDING APPEAL OR, ALTERNATIVELY, TO STAY THE MANDATE PENDING RESOLUTION OF A PETITION FOR CERTIORARI

Alexander V. Maugeri
JONES DAY
250 Vesey St.
New York, NY 10281
(202) 326-3939
amaugeri@jonesday.com

Justin E. Herdman
James R. Saywell
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
jherdman@jonesday.com
jsaywell@jonesday.com

*Counsel for Appellant*

# INTRODUCTION

On May 15, 2024, this Court granted Alexander "P.G." Sittenfeld's motion under 18 U.S.C. § 3143(b) for release pending appeal, finding that (i) he was not a flight risk or attempting to delay, and (ii) that his appeal presented "substantial" questions. D. 65. The Court thereby released Sittenfeld from prison part-way through his sentence. Ultimately, a divided panel affirmed his convictions. But each of the judges recognized that this case presents issues that warrant Supreme Court review. *See* D. 73-2 (Op.).

Sittenfeld intends to file a timely certiorari petition to seek review of those substantial issues. Because § 3143(b) expressly covers release pending certiorari, Sittenfeld asks this Court to clarify that its release order will remain in effect pending the filing and disposition of his certiorari petition. After all, Sittenfeld is (still) neither a flight risk nor a threat to public safety. And the questions presented by his case are (still) "substantial," as the Court's three thoughtful opinions make abundantly clear. We, like Judge Murphy, "doubt . . . that courts should be sending people to prison based on" the "subtle distinction[s]" in the existing precedent, Op. 44 (Murphy, J., concurring)—and we certainly doubt that Sittenfeld should be sent back to prison before the Supreme Court has the opportunity to clear up these "blurr[y]" lines and consider these substantial questions, Op. 2. This Court has already held that "the standard for release pending appeal is met," D. 65 at 2; it should now clarify that its release order applies through Sittenfeld's timely "petition for a writ of certiorari." 18 U.S.C. § 3143(b).

Alternatively, Sittenfeld requests a stay of the appellate mandate, which relief is appropriate if a petition for certiorari "would present a substantial question" and there is "good cause" for a stay. Fed. R. App. Proc. 41(d)(1). Again, this Court has already recognized that "substantial" questions are at stake here. And "good cause" exists to preserve the status quo, lest Sittenfeld suffer the irreparable harm of completing his sentence only to have the Supreme Court later vacate his convictions.

In short, under both § 3143(b) and Federal Rule 41(d)(1), two facts are together dispositive. *First*, there is a reasonable probability that the Supreme Court will grant review: The questions presented raise high-profile issues of constitutional dimension; implicate political, First Amendment-protected conduct that occurs routinely across the country; divide the federal Courts of Appeals; and garner the attention of scores of noteworthy *amici*, including former Attorneys General of the United States, White House Counsels, and public-integrity prosecutors. *Second*, the balance of the equities is clear: If the Supreme Court denies review and Sittenfeld resumes serving his sentence, the Government is no worse off. He will still serve his sentence. But if Sittenfeld reports to prison immediately and the Court then grants review, Sittenfeld will never be able to recover that lost time. Neither will his wife, who is expecting the birth of their third child. This is thus a quintessential case for continued interim release—or a stay of the mandate—pending the disposition of a petition for certiorari.

## LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a defendant is entitled to release pending the disposition of "a petition for a writ of certiorari" if (i) he is not a flight risk, a danger to the public, or unduly seeking delay; and (ii) if he "raises a substantial question" that, if resolved in his favor, is "likely to result in" reversal or a new trial. Similarly, the Federal Rules permit this Court to stay its mandate pending a petition for certiorari upon finding both a "substantial question" and "good cause." Fed. R. App. P. 41(d)(1).

Those standards are satisfied when a case is a reasonable candidate for certiorari. This Court has already held that § 3143(b) does not require that reversal itself be "likely," but only that the defendant present a "close question" "that could go either way." D. 65 at 2; *accord* Op. 2 ("This is one such [hard] case."). Indeed, when assessing motions for release pending certiorari, other federal courts have required, at most, a "reasonable probability" of Supreme Court review and reversal. *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007); *see also, e.g.*, *United States ex rel. Chandler v. Cook Cnty.*, 282 F.3d 448, 450 (7th Cir. 2002) (staying mandate where "possibility of the Supreme Court's granting certiorari . . . is not entirely insubstantial"). And as for the "good cause" inquiry, it simply asks this Court to balance the equities on whether to preserve the status quo until the Supreme Court has an opportunity to act. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1380 (Fed. Cir. 2020).

Applying those standards, courts have historically granted relief to defendants in corruption cases, like this one, with significant implications for ordinary politics. For

example, the defendants in *McDonnell* and *Skilling v. United States*, 561 U.S. 358 (2010), remained on bond throughout their Supreme Court cases, as a result of decisions to stay the mandates of the Fourth and Fifth Circuits.[1]  Similarly, the defendants in *Snyder v. United States*, 603 U.S. 1 (2024), and *Kelly v. United States*, 590 U.S. 391 (2020), remained at liberty by successfully moving to delay their surrenders to the Bureau of Prisons until after the Supreme Court's decisions—a result functionally identical to granting bond.[2] And courts have also granted similar relief in important public-corruption cases that ultimately fell short of certiorari.  *See, e.g.*, *United States v. Ring*, No. 11-3100 (D.C. Cir. Apr. 4, 2013) (staying mandate pending disposition of writ of certiorari); *United States v. Siegelman*, No. 07-13163 (11th Cir. Dec. 1, 2011) (same).

## ARGUMENT

The Court should continue Sittenfeld's release pending appeal here too.

**I.      Sittenfeld's Certiorari Petition Will Present Substantial Questions.**

Sittenfeld plans to file a petition for certiorari that raises the substantial questions all three judges identified here—substantial questions about when campaign contributions, which are protected by the First Amendment, can be recharacterized as illegal bribes.  This Court has already held that those questions are "substantial," and

---

[1] *See United States v. McDonnell*, No. 15A218 (U.S. Aug. 31, 2015); *United States v. Skilling*, No. 6-20885 (5th Cir. Sept. 6, 2011), ECF 315.

[2] *See Snyder v. United States*, No. 16-cr-160 (N.D. Ind. Sept. 13, 2023), ECF 609; *United States v. Kelly*, No. 15-cr-00193 (D.N.J. July 1, 2019), ECF 397.

that "the standard for release pending appeal is met," in granting Sittenfeld's post-argument motion for release. D. 65 at 2. The Court's three opinions on the merits only underscore that conclusion, expressly teeing up the questions for Supreme Court review. And even without those opinions, Sittenfeld's pitch for certiorari is straightforward: This case presents the Justices with a question of law that has divided the Courts of Appeals and implicates political conduct that occurs "[e]very day in this country," Op. 2.

**1.** This Court is already familiar with the merits of this case, having received a large volume of briefing, heard argument, and produced three thoughtful opinions. Without repeating his arguments, Sittenfeld submits that the Court's opinions show the questions presented to be "substantial." 18 U.S.C. § 3143(b); Fed. R. App. P. 41(d)(1).

A majority upheld Sittenfeld's convictions under existing precedent, relying in particular on *United States v. Blandford*, 33 F.3d 685 (6th Cir. 1994), and Justice Kennedy's concurring opinion in *Evans v. United States*, 504 U.S. 255 (1992). At the same time, the Court recognized that "existing precedent" draws a "blurr[y]" line between "legitimate campaign donations and illegitimate bribes." Op. 2. The Court also remarked that "it may be time for the Supreme Court to revisit or refine" that line "to require more of the government" in cases that seek to recharacterize campaign contributions as bribes, given "First Amendment interests and the realities of our political system." Op. 18 n.8.

Concurring, Judge Murphy wrote that treating campaign contributions as bribes for official acts "raise[s] serious concerns under the First Amendment." Op. 39. He

5

also explained that "existing precedent" makes it difficult to distinguish the facts of this case from scenarios that could not possibly involve criminal activity. Op. 39–40. That difficulty stems from the "vague" "line" that existing precedent uses to "separate political speech from illegal bribery," seemingly asking jurors to distinguish "explicit" agreements from "express" ones, even though those are "synonyms." Op. 40, 44. Judge Murphy even went so far as to say that he "doubt[s]" whether "courts should be sending people to prison" based on such a tenuous, illusory line. Op. 44. But he ultimately concluded that the Sixth Circuit was not "the right court to address" that problem, as "the Supreme Court created [it] by adopting an ambiguous test." Op. 46.[3]

Finally, Judge Bush's dissent makes a strong case for certiorari. It agreed with Sittenfeld that the Constitution required the Government to prove an "explicit" *quid pro quo*, and urged the Supreme Court to clarify the law to avoid the "danger" created by prosecutions like this one. Op. 53, 67. The dissent also highlighted the "costs" of failing to police the "line" between explicit bribes and ordinary campaign donations: "If Sittenfeld's verdict is allowed to stand," Judge Bush warned, "it may incentivize more prosecutions of campaign contributions in the future," with "grievous" consequences for the First Amendment. Op. 70.

---

[3] Judge Murphy correctly noted that "nothing prohibits" Sittenfeld from raising an additional question before the Supreme Court: Whether the Hobbs Act reaches garden-variety bribery, including in cases that involve constitutionally protected campaign contributions. Op. 47.

6

As the Court knows, it is rare for an entire panel to express concern with existing precedent, let alone to suggest that the Supreme Court should revisit it. Likewise, it is unusual for a court to grant a motion for release pending appeal, especially after the defendant has *already* reported to prison and the court has *already* heard oral argument. This Court took those extraordinary steps because this is an extraordinary case. And despite the fact that the majority ultimately affirmed, Sittenfeld's challenge clearly raises "substantial" questions, within the meaning of § 3143(b) and Federal Rule 41(d)(1).

2. Even putting aside this Court's opinions, there is a "reasonable probability" of Supreme Court review. *Nara*, 494 F.3d at 1133; *see also Cook Cnty.*, 282 F.3d at 450 (staying a mandate because the possibility of certiorari was "not entirely insubstantial").

*First*, Sittenfeld's petition will present a pure question of law that has divided both this Court and the other Courts of Appeals: the legal standard for proving an "explicit" *quid pro quo*. The members of the panel disagreed on what it means for a *quid pro quo* to be "explicit." *Compare* Op. 16–18 (majority), *with* Op. 57–61, 67–70 (Bush, J., dissenting). And other courts have likewise disagreed on that same issue. *Compare, e.g., United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) ("the *quid pro quo* [must] be clear and unambiguous"), *with Blandford*, 33 F.3d at 696 ("merely knowing the payment was made in return for official acts is enough").

*Second*, Sittenfeld's petition implicates political conduct that occurs "[e]very day in this country." Op. 2. Every candidate for President and for Congress solicits and accepts campaign contributions, and *everybody knows* those contributions are connected

7

to the officials' political views. Given that reality, Sittenfeld's prosecution provides a template for how an ambitious prosecutor might target a disfavored politician: simply allege that the politician solicited a bribe through the kind of conduct that Judge Murphy described in his opening hypothetical. *See* Op. 39. The Supreme Court is likely to be concerned about that potential weaponization of prosecutorial power. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 613–14 (2024) (rejecting a theory that would allow past Presidents' actions to be "routinely subjected to scrutiny in criminal prosecutions").

Those concerns are well-founded and widely shared. Sittenfeld's appeal was supported by a wide range of *amici*, including not only former White House Counsels, Attorneys General, and other senior Justice Department officials, but also former federal public-integrity prosecutors—a group not known for breaking rank. In this Court, those former prosecutors warned that cases like this one "chill[] essential public servant-constituent interactions, undermin[e] the ability of citizens to financially contribute to campaigns, and erod[e] faith in the legitimacy of righteous public corruption cases." D. 35 at 4. Other *amici* raised similar concerns. *See, e.g.*, Brief of Former Federal Officials, D. 33, at 5 (arguing that the Government claims "license to rely on lawful campaign contributions to criminalize commonplace election activities"). Sittenfeld expects a similar (indeed, even broader) coalition of *amici* to file certiorari-stage briefs at the Supreme Court, strengthening Sittenfeld's case for certiorari.

*Third*, the Supreme Court routinely grants reviews and reverses aggressive applications of the public-corruption laws. Just last Term, the Court rejected an

interpretation of § 666 that would leave no "remotely clear lines [between] an innocuous or obviously benign gratuity from a criminal gratuity." *Snyder v. United States*, 603 U.S. 1, 16 (2024). The previous Term, the Court rejected a theory of honest-services fraud that would reach "well-connected and effective lobbyists." *Percoco v. United States*, 598 U.S. 319, 331 (2023). It has also rejected a theory of fraud that would allow "federal prosecutors . . . to set standards of disclosure and good government for state and local officials." *Ciminelli v. United States*, 598 U.S. 306, 316 (2023); *see also Kelly v. United States*, 590 U.S. 391, 403 (2020) (similar). And, in *McDonnell*, the Court credited the concerns of former federal officials that a theory of bribery would "chill federal officials' interactions with the people they serve and thus damage their ability to effectively perform their duties," 579 U.S. at 575—the same concerns that Sittenfeld and his *amici* raise here. Indeed, the consistent theme of the Supreme Court's recent decisions is that the public-corruption laws must not encroach into the domain of ordinary politics. Again, that is exactly Sittenfeld's argument in this case.

*Finally*, this case is an excellent vehicle for resolving the nature of an "explicit" agreement in a campaign-contributions case. Sittenfeld's petition will arise on direct review (as opposed to habeas review); the critical issue was preserved; and no procedural defect could bar the issue's resolution by the Court. In addition, the nature of an explicit agreement is outcome-determinative here because the prosecution lacks any "direct, unambiguous evidence of a *quid pro quo*." Op. 54 (Bush, J., dissenting). Indeed, until this case, no federal Court of Appeals had relied on ambiguous evidence

9

to satisfy *McCormick*. *See* Op. 54 (Bush, J., dissenting). There was no smoking gun here. *See* Op. 18 n.8. And to the extent that the Supreme Court decides to address the case's facts—in addition to the legal standard for assessing those facts—it benefits the Court that all the relevant evidence is recorded and readily available. For those reasons, if the Court has any interest in "revisit[ing] or revis[ing]" *McCormick*'s requirement of an explicit *quid pro quo*, Op. 18 n.8, this case presents the perfect opportunity.

## II.    ABSENT RELIEF, SITTENFELD MAY BE FORCED TO SERVE HIS SENTENCE BEFORE SUPREME COURT REVIEW.

Given the probability of further review, the panel's earlier release order should remain in force. And there is also "good cause" for a stay. Fed. R. App. Proc. 41(d)(1). After all, Sittenfeld is not a public threat. And far from being a flight risk, he is the father of two young children, with a third on the way. There is thus no harm, to the Government or to the public, if he resumes serving his sentence *after* the certiorari process concludes (assuming the Court does not grant review and reverse). By contrast, in the absence of relief, Sittenfeld is likely to conclude the remaining term of his sentence before the Supreme Court even considers whether to grant review. Especially given the substantial questions involved, that is unjust. The equities thus tip decidedly in favor of clarifying that this Court's release order remains in effect pending Sittenfeld's "petition for a writ of certiorari." 18 U.S.C. § 3143(b); *see* Fed. R. App. Proc. 41(d)(1).

## CONCLUSION

Sittenfeld respectfully requests that the Court clarify that its order granting release pending appeal remains in effect pending the filing and disposition of a timely certiorari petition; or, in the alternative, stay its mandate pending the filing and disposition of a timely certiorari petition.

February 21, 2025

Alexander V. Maugeri
Jones Day
250 Vesey St.
New York, NY 10281
(202) 326-3939
amaugeri@jonesday.com

Respectfully submitted,

*/s/ James R. Saywell*
Justin E. Herdman
James R. Saywell
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
jherdman@jonesday.com
jsaywell@jonesday.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,711 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 27(d)(2)(A), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Garamond style, 14 point font.

February 21, 2025 /s/ *James R. Saywell*
James R. Saywell

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the original of the foregoing brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

                                             */s/ James R. Saywell*
                                             James R. Saywell